UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JIAKESHU TECHNOLOGY LIMITED,

Petitioner,

-against-

AMAZON.COM SERVICES, LLC, et al.,

Respondents.

22-CV-10119 (JGLC)

**OPINION AND ORDER**

JESSICA G. L. CLARKE, United States District Judge:

Jiakeshu Technology Limited ("Jiakeshu" or "Petitioner") brought this action seeking to vacate an arbitral award entered in favor of Amazon.com Services, LLC and Amazon.com, Inc. (together, "Amazon" or "Respondents"). Respondents cross-petition the Court to confirm the arbitral award. For the reasons stated herein, Petitioner's petition to vacate the arbitral award is DENIED, and Respondent's cross-motion to confirm the award is GRANTED.

## BACKGROUND

### I. The Business Solutions Agreement

Petitioner is a corporation formed under the laws of Hong Kong and has its principal place of business in China. ECF No. 1-1 ("Pet.") ¶ 1. In 2016, Petitioner became a third-party seller on Amazon. *Id*. ¶ 12. To operate as a third-party seller on Amazon, Petitioner was required to, and did agree to, be governed by Respondents' "Business Solutions Agreement" (the "BSA"). *Id*.; *see also* ECF No. 23-3 ("BSA").

The BSA requires sellers to use their authorized names and to ensure that the information provided to Amazon "at all times remains accurate, complete, and valid." BSA § 2. The BSA also provides that Amazon "may at any time require [the seller] to provide any financial, business or personal information [Amazon] request[s] to verify [the seller's] identity." *Id*. § P-4.

Certain provisions of the BSA relate to fraudulent conduct by sellers on the platform. Section 2 of the BSA provides that Amazon "may in [its] sole discretion permanently withhold any payments" to a third-party seller if it determines that the seller's account "has been used to engage in deceptive, fraudulent, or illegal activity (including the sale of counterfeit goods), or to repeatedly violate [Amazon's] Program Policies." *Id*. § 2.

Per Section 3 of the BSA, Amazon may "suspend or terminate" the agreement and the third-party seller's account if Amazon determines that "(a) [the seller has] materially breached the Agreement and failed to cure within 7 days . . . ; (b) [the seller's] account has been, or [Amazon's] controls identify that it may be used for deceptive, fraudulent, or illegal activity; or (c) [the seller's] use of the Services has harmed, or [Amazon's] controls identify that it might harm other sellers, customers, or Amazon's legitimate interests." *Id.* § 3.

Sellers must also abide by Amazon's "Customer product reviews policy." ECF No. 23-4 ("Reviews Policies"); *see also* BSA at 1 (incorporating "Program Policies"). The Reviews Policies forbid sellers from offering "a third party a financial reward, discount, free products, or other compensation in exchange for a review on their product or their competitor's products" or from "insert[ing] a request for a positive Amazon review or an incentive in exchange for a review into product packaging or shipping box." Reviews Policies at 1–2. "Amazon has a zero-tolerance policy towards any customer reviews violations." *Id*. at 2. If Amazon detects any attempted manipulation of customer reviews, Amazon may take immediate action, including but not limited to "[i]mmediate and permanent withdrawal of the seller's selling privileges on Amazon and withholding of funds." *Id*.

The BSA also contains an arbitration clause, in which Amazon and the seller consent that "any dispute with Amazon or its Affiliates or claim relating in any way to this Agreement or to

[the seller's] use of the Services will be resolved by binding arbitration as described in this paragraph, rather than in court." BSA § 18 (emphasis omitted). The BSA provides that any "arbitration will be conducted by the American Arbitration Association (AAA) under its commercial rules." *Id*. The BSA notes that it is governed by "the laws of the State of Washington, United States together with the Federal Arbitration Act and other applicable federal law." *Id*. at 14.

## II.   The Underlying Dispute and Arbitration

Petitioner alleges that on April 29, 2021, Amazon deactivated Petitioner's account, accusing Petitioner of manipulating customer reviews of Petitioner's products. Pet. ¶ 16. Amazon also froze close to $50,000 of Petitioner's sales proceeds, "representing approximately two weeks' worth of funds, which were awaiting disbursement" to Petitioner's account. *Id*. ¶ 17; ECF No. 23-1 ("Award") at 5.

Petitioner appealed to Amazon on April 30, 2021. Pet. ¶ 20. Petitioner admitted in detail to soliciting customer feedback by sending gift cards in exchange for reviews, although Petitioner now claims that it did not actually engage in soliciting sponsored reviews. Award at 2; Pet. ¶ 20. On June 18, 2021, Amazon terminated Petitioner's selling privileges. Pet. ¶ 21. Subsequently, in order to "verify the account holder was the actual individual seeking funds release," Amazon requested a virtual "in person identity verification interview," which Petitioner ignored. Award at 5.

On December 15, 2021, Petitioner filed an arbitration demand with the AAA, seeking release of its sales proceeds and requesting that its account be reinstated. ECF No. 23-5 ("Arb. Demand") at 20. Petitioner asserted that Amazon was "wholly unjustified" in terminating

Petitioner's account and in withholding Petitioner's sales proceeds. *Id*. ¶ 22. Petitioner asserted

that it was being "harshly penalized for one minor" infraction of the Reviews Policies. *Id.* ¶ 11.

The AAA appointed Hon. Billie Colombaro (ret.) as arbitrator (the "Arbitrator")*.* ECF

No. 23-6. The Arbitration was conducted by written submissions; the parties submitted briefs and

exhibits to the Arbitrator. ECF No. 23-8 ¶ 1.

In its initial brief, among other arguments, Petitioner asserted that Section 2 of the BSA

was unenforceable under Washington law because it was an adhesion contract that was both

substantively and procedurally unconscionable and that it was an unenforceable penalty clause.

ECF No. 23-9 at 5–7. Petitioner further argued that Amazon's failure to disburse sales proceeds

breached the implied covenant of good faith and fair dealing under Washington law. *Id*. at 7–9. In

opposition, Respondents argued that as Petitioner admitted to breaching the BSA in its arbitration

demand, Petitioner's claims "necessarily fail, unless it can satisfy its burden of proving that the

contract terms it accepted are unenforceable." ECF No. 23-2 at 5. Respondents further contended

that Petitioner failed to meet its burden by failing to prove that the BSA was unenforceable. *Id.*

Petitioner thereafter submitted its reply brief. ECF No. 23-10.

The Arbitrator issued the Award on August 4, 2022, finding all of Petitioner's "arguments

in its defense to be unavailing." Award at 5 (citing several opinions analyzing issues under

Washington law). The Arbitrator noted that the parties' relationship was governed by the BSA

and incorporated policies, finding that Petitioner violated the Reviews Policies and failed to

comply with Respondents' "Seller Code of Conduct" and in person identity verification

interview requirement. *Id*. at 2–3. The Arbitrator found that "[b]reaching trust just one time is not

a 'minor' infraction," and "[n]otwithstanding, those agreements/policies to which [Petitioner]

obligated itself to uphold, in exchange for the privileges of using Amazon's platform to sell its

products, do not distinguish minor and major infractions." *Id.* at 5. Petitioner's admitted failure to adhere to the BSA and its subsequent refusal to participate in the identity verification process provided sufficient evidence that Petitioner was in breach of the BSA, which gave Respondents the right to suspend Petitioner's account and withhold the funds. *Id.* at 6. The Arbitrator therefore denied all Petitioner's claims. *Id.*

## III.   Procedural History

On October 31, 2022, Petitioner filed a petition to vacate the Award in New York County Supreme Court. ECF No. 1-1. On November 29, 2022, Respondents removed the action to this Court. ECF No. 1. Petitioner moved to remand to state court on December 21, 2022, which this Court denied on June 21, 2023, finding that the Court had federal subject matter jurisdiction. ECF Nos. 6, 16.

On June 26, 2023, Petitioner filed their amended motion to vacate the Award. EFC No. 17. Respondents filed a cross-motion to confirm the Award on July 17, 2023. ECF No. 21. On August 25, 2023, Petitioner filed its reply in support of its motion to vacate and in opposition to Respondents' cross-motion. ECF No. 26.[1] Respondents filed its reply in support of its cross-motion to confirm the Award on September 8, 2023. ECF No. 29. Respondents also filed three notices of supplemental authority. ECF Nos. 31–33.

## LEGAL STANDARD

Under the New York Convention, the Court "shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207. "Article V of the Convention specifies seven exclusive

---

[1] Although untimely, the Court will consider Plaintiff's opposition and reply in deciding this motion.

grounds upon which courts may refuse to recognize an award." *Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 90 (2d Cir. 2005); *see Commodities & Mins. Enter. v. CVG Ferrominera Orinoco, C.A.,* 49 F.4th 802, 809 n.4 (2d Cir. 2022) (listing the seven grounds for vacatur). The party opposing enforcement of an arbitral award bears the burden of proving that one of the seven defenses under the New York Convention applies, *Encyclopaedia Universalis*, 403 F.3d at 90, and the "burden is a heavy one, as 'the showing required to avoid summary confirmance is high.'" *Olin Holdings Ltd. v. State*, 73 F.4th 92, 108 (2d Cir. 2023) (quoting *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997)).

If the arbitration award is entered within the United States, as here, the grounds available for vacatur under the FAA also apply. *Scandinavian Reinsurance Co. Ltd. v. Saint Paul Fire and Marine Ins. Co.*, 668 F.3d 60, 71 (2d Cir. 2012); *see also Zurich Am. Ins. v. Team Tankers A.S.*, 811 F.3d 584, 588 (2d Cir. 2016). Under the FAA, courts may only vacate an arbitrator's decision under "very unusual circumstances." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568 (2013) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)). The grounds for vacating an arbitration award under Section 10(a) of the FAA are:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

The Second Circuit has recognized an additional, judicially-created ground for vacatur: "an arbitral decision may be vacated when an arbitrator has exhibited a manifest disregard of the law.'" *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 121 (2d Cir. 2011) (quoting *Westerbeke Corp. v. Diahatsu Motor Co., Ltd.*, 304 F.3d 200, 208 (2d Cir. 2002)). The "judicially created" manifest disregard standard is "severely limited." *Westerbeke Corp.*, 304 F.3d at 208 (quoting *Gov't of India v. Cargill, Inc.*, 867 F.2d 130, 133 (2d Cir. 1989)). For a vacatur under the manifest disregard doctrine to be proper, the court must find "something beyond and different from mere error in the law or failure on the part of the arbitrators to understand the law. *Jock*, 646 F.3d at 121 n.1 (quoting *Westerbeke Corp.*, 304 F.3d at 208). "The two part showing requires the court to consider, first, 'whether the governing law alleged to have been ignored by the arbitrators was well defined, explicit, and clearly applicable,' and, second, whether the arbitrator knew about 'the existence of a clearly governing legal principle but decided to ignore it or pay no attention to it.'" *Id*. (quoting *Westerbeke Corp.*, 304 F.3d at 209).

A district court is not permitted to "vacate an arbitral award merely because it is convinced that the arbitration panel made a wrong call on the law." *Wallace v. Buttar*, 378 F.3d 182, 190 (2d Cir. 2004). "[T]he award 'should be enforced, despite a court's disagreement with it on its merits, if there is a *barely colorable justification* for the outcome reached." *Id.* (quoting *Banco de Seguros del Estado v. Mutual Marine Office, Inc.*, 344 F.3d 255, 260 (2d Cir. 2003)).

With respect to confirming an arbitration award under the New York Convention, the Court "shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." *Olin Holdings*, 73 F.4th at 108 (quoting 9 U.S.C. § 207). "Due to the parallel natures of a motion to vacate and a motion to confirm an arbitration award, denying the former implies granting the latter." *Shenzhen*

*Zongheng Domain Network Co. v. Amazon.com Servs. LLC*, No. 23-CV-03334 (JLR), 2023 WL
7327140, at *5 (S.D.N.Y. Nov. 7, 2023) (internal citation omitted).

## DISCUSSION

Petitioner argues that the Award should be vacated because: (1) the Arbitrator manifestly
disregarded the law in ruling Section 2 enforceable; (2) it is "completely irrational" to find
Section 2 of the BSA enforceable; and (3) enforcing Sections 2 and 18 violates the public policy
of the state of Washington. *See generally* ECF No. 18 ("Pet. Mem."). As an initial matter,
Petitioner does not rely on any of the grounds under the New York Convention or the FAA upon
which courts may vacate an arbitral award, instead relying on the "severely limited" manifest
disregard standard, *see Westerbeke Corp.*, 304 F.3d at 208, and other unrecognized bases. For the
reasons stated below, Petitioner's arguments are without merit, and as such, the Court confirms
the Award.

### I.   The Arbitrator Did Not Manifestly Disregard the Law

Petitioner has not shown that the Arbitrator acted in manifest disregard of the law in
finding that Section 2 of the BSA is enforceable. Petitioner argues that Section 2 fails the
"reasonable forecast" test in determining whether a liquidated damages clause is enforceable.
Pet. Mem. at 10. Petitioner cites Washington law for the test: "First, the amount fixed must be a
reasonable forecast of just compensation for the harm that is caused by the breach. Second, the
harm must be such that it is incapable or very difficult of ascertainment." *Id*. (quoting *Watson v.
Ingram*, 881 P.2d 247, 249 (Wash. 1994)).

Petitioner has not shown that the Arbitrator ignored clearly governing legal principles.
*See Westerbeke Corp.*, 304 F. 3d at 209. As described above, Petitioner's argument that the BSA
was unenforceable was thoroughly briefed to the Arbitrator. In finding that "[a]ll of [Petitioner's]
arguments in its defense are unavailing," the Arbitrator cited a number of cases applying

Washington law, including *Watson v. Ingram*, which Petitioner avers sets forth the standard for determining whether a liquidated damages clause is enforceable. Award at 5; *see also* Pet. Mem. at 10. The Arbitrator determined that "[g]iven Claimant's agreement to adhere to the BSA and policies, its admitted violations, and refusal to participate in the IPI process, there is sufficient evidence that Claimant breached the parties' agreements, giving Respondent the right to suspend its account and withhold the approximate 2 weeks of funds – a reasonable period." Award at 6.

That Petitioner does not agree with the Arbitrator's assessment of the record (after citing the very case relied upon by Petitioner) is not a basis to vacate an arbitration award. If there is a "barely colorable justification" for the Arbitrator's findings, which the Court finds that there is, the award should not be vacated. *See Wallace*, 378 F.3d at 190. As other courts in this district have recently held in rejecting the same argument presented here, that the Arbitrator disagreed with Petitioner's argument does not mean that the Arbitrator manifestly disregarded the law. *See Shenzhen Lanteng Cyber Tech. Co. v. Amazon.com Servs.*, LLC, No. 23-CV-991 (GHW), 2023 WL 6276691, at *8 (S.D.N.Y. Sept. 26, 2023); *US Rising Star Inc. v. Amazon.com Servs., LLC*, No. 23-CV-778 (CM), 2023 WL 6882337, at *3 (S.D.N.Y. Oct. 18, 2023); *Shenzhen Zongheng Domain Network Co.*, 2023 WL 7327140, at *5; *Longyan Junkai Info. Tech. Co., Ltd., v. Amazon.com Servs. LLC*, No. 23-CV-4869 (JGK), 2023 WL 8602839, at *6 (S.D.N.Y. Dec. 12, 2023).

Petitioner additionally argues that other arbitrators have found Section 2 of the BSA to be unconscionable. *See* Pet. Mem. at 13 n.2. That does not justify vacatur of the Award. *See Shenzhen Lanteng Cyber Tech. Co.*, 2023 WL 6276691, at *8 ("[T]he fact that other arbitrators ruled differently does not justify vacatur of the Award."); *US Rising Star Inc.*, 2023 WL 6882337, at *3 (S.D.N.Y. 2023) (finding that "different arbitrators can reach different

conclusions about the same issue" without manifestly disregarding the law); *Shenzhen Zongheng Domain Network Co.*, 2023 WL 7327140, at *6. Even if the Court disagreed with the Arbitrator, that would not justify vacatur of the Award. *See Wallace*, 378 F.3d at 190 (explaining that "[a] federal court cannot vacate an arbitral award merely because it is convinced that the arbitration panel made the wrong call on the law"). Indeed, "[t]he Court does not sit as a court of appeal with respect to the Arbitrator's legal conclusions." *Shenzhen Lanteng Cyber Tech. Co.*, 2023 WL 6276691, at *8. Accordingly, this argument is not a basis to vacate the Award.

## II.    The Award May Not Be Vacated for Complete Irrationality

Petitioner next argues that the Award must be vacated for "complete irrationality." The Second Circuit has declined to recognize "complete irrationality" as a ground for vacatur under the FAA. *See Porzig v. Dresdner, Kleinwort, Benson, North America LLC.*, 497 F.3d 133, 139 (2d Cir. 2007) (declining to "wander from the narrow [path] embodied in [the court's] own jurisprudence" by allowing for vacatur on "complete irrationality" grounds); *Shenzhen Zongheng Domain*, 2023 WL 7327140 at *6 (noting that the Second Circuit does not recognize "complete irrationality" as a ground for vacatur"). As such, the Court rejects this argument as well.

## III.    The Award May Not Be Vacated for Violation of Public Policy

The Court is similarly unconvinced by Petitioner's argument that the award violates "strong public policy" of Washington state and should therefore be vacated.

Petitioner begins by arguing that Section 8 of the BSA – the liability limitation clause – is unenforceable because it violates Washington public policy. Pet. Mem. at 15. Petitioner supports this position by pointing to a bankruptcy court decision from the District of Arizona that, Petitioner contends, applied a six-factor balancing test used by Washington state courts to determine whether an agreement is likely to be declared invalid on public policy grounds. *Id.* Petitioner argues that the bankruptcy court's analysis should be applied to Section 2 of the BSA

as well, and that the Award should be vacated on that basis. *Id*. at 17–18. Petitioner did not raise this argument during the arbitration proceedings or in its Petition seeking to vacate the Award. As Petitioner failed to raise this issue in the arbitration, the Court cannot address this issue. *Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 315 (2d Cir. 1998) (holding that an issue not raised to the arbitrators was "forfeited").

Petitioner next claims that the mandatory arbitration clause in Section 18 of the BSA violates public policy and forms part of Amazon's strategy to control and mistreat sellers. Pet. Mem. at 18. However, Petitioner failed to raise any objection to arbitrability or the enforcement of Section 18 before the Arbitrator and by such conduct, has waived this argument. *See Opals on Ice Lingerie v. Bodylines, Inc.*, 320 F.3d 362, 368 (2d Cir. 2003) ("[I]f a party participates in arbitration proceedings without making a timely objection to the submission of the dispute to arbitration, that party may be found to have waived its right to object to the arbitration."); *Halley Optical Corp v. Jagar Int'l Mktg. Corp.*, 752 F. Supp. 638, 639–40 (S.D.N.Y. 1990) (finding waiver where a party participated in the arbitration, because to "find otherwise would allow a party to participate in an arbitration, with the assurance that if it loses it may later challenge whether it had ever agreed to arbitration").

Thus, there is no basis to vacate the Award on public policy grounds.

## IV.    Respondents' Cross-Motion to Confirm the Award is Granted

Respondents seek to confirm the Award under the FAA and the New York Convention. Because Petitioner has not shown sufficient grounds for vacatur of the Award, Respondents' motion to confirm the Award is granted. *See Shenzhen Lanteng Cyber Tech. Co.*, 2023 WL 6276691, at *11 ("[B]ecause [Petitioner] has not shown that any of the grounds for refusal or deferral of enforcement of the Award apply, Amazon's motion to confirm the Award is granted.").

## CONCLUSION

For the reasons set forth above, Petitioner's petition to vacate the Award is DENIED and Respondents' cross-motion to confirm the Award is GRANTED. The Clerk of Court is respectfully directed to terminate ECF Nos. 17 and 21, to enter judgment in favor of Respondents and to close the case.

Dated:  January 3, 2024
        New York, New York

SO ORDERED.

_Jessica Clarke_

JESSICA G. L. CLARKE
United States District Judge

12